T. MATTHEW PHILLIPS, ESQ.
Calif. State Bar No. 165833
United States Bar No. 317048
4894 W. Lone Mtn. Rd. No. 132
Las Vegas, Nevada 89130
TMatthewPhillips@aol.com
Tel: (323) 314-6996
*Counsel for Petitioner*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT *of* CALIFORNIA

|  |  |
|---|---|
| **NICOLE DODSON** ) | **Case No:** |
| ) | |
| ) | |
| *Petitioner* ) | |
| ) | PETITION *under the* INDIAN |
| ) | CHILD WELFARE ACT *of* 1978, |
| *vs.* ) | [25 U.S.C. § 1901, *et. seq*.]. |
| ) | |
| ) | |
| **ELLIOT FISHER** ) | |
| ) | |
| *Respondent* ) | |
| ) | |
| ) | |
| ) | *Plaintiff Demands Trial by Jury* |

## I.    Petition Under the Indian Child Welfare Act.

(1)    <u>Introduction</u>:  Petitioner, Nicole Dodson, brings this action pursuant to THE INDIAN CHILD WELFARE ACT *of* 1978, ("ICWA"), [25 U.S.C. § 1901].

(2)    <u>Indian Parent</u>:  Petitioner, Nicole Dodson, is a citizen of Cherkoee Nation, [Cherokee Registry No. C0526560], and mother to Roland Davis, (10 years old).  Ms. Dodson is an "Indian parent" under ICWA, [25 U.S.C. § 1903(4)].

(3)    <u>Indian Child</u>:  Roland Davis Fisher is a citizen of Cherokee Nation, [Cherokee Registry No. C0526330].  Roland Davis Fisher is an "Indian child" under ICWA, [25 U.S.C. § 1903(4)].

(4)    <u>Indian Child's Tribe</u>:  The Indian's child's tribe is Cherokee Nation, a federally recognized tribe, (ᏣᎳᎩ ᏓᎦᎵ Tsalagihi Ayeli; *or alternatively*, ᏣᎳᎩᏱᎵ Tsalagiyehli), [25 U.S.C. § 1903(5)].

(5)    <u>Putative Father</u>:  On July 1, 2015, ***more than ten years ago***, Respondent, Elliot Fisher filed a paternity suit against Nicole Dodson to determine parentage of Roland Daivs, the Indian child, [*Fisher vs. Dodson*; (O.C. No. 15P000973)].

(6)    <u>No Judgment of Paternity</u>:  Remarkably, the paternity case has dragged-on ***more than ten years***—with no end in sight; more remarkable still, Mr. Fisher refuses to file a judgment of paternity—despite being so ordered at least twice, (in 2018 and 2024).  On top of that, Mr. Fisher refuses to take a DNA test.

(7)    <u>Challenged Custody Order</u>:  On Aug. 10, 2021, the State divested all of Ms. Dodson's parental rights—in an order that contains no "expiration date," and no "roadmap to recovery," (*i.e.*, no terms or conditions, which, if satisfied, might lead to recovery of rights).  The challenged order gives sole custody of an Indian child to a *putative* father—who, despite ***more than ten years*** of litigation, which he instigated, there is still (i) ***no judgment of paternity***, and (ii) ***no DNA test results***.  Ms. Dodson argues that placement with "Indian relatives" must take preference over "putative fathers" who (i) ***refuse to file a judgment of paternity***, and (ii) ***refuse to take a DNA test***.

(8)  <u>A Most Curious Paternity Case</u>:  In *Fisher vs. Dodson*, the court, on Aug. 10, 2021, awarded custody of the Indian child to Mr. Fisher—despite the fact that, again, he (i) ***never filed a judgment for paternity***, and (ii) ***never took a DNA test***. Despite ***more than ten years*** of litigation, Mr. Fisher (iii) never produced a tax return, (iv) never reimbursed Ms. Dodson for pregnancy and delivery expenses, (v) never paid child support, and (vi) never paid "back" child support, *i.e.*, for the first seven years that Ms. Dodson alone raised the Indian child.

(9)  <u>Wrongful Termination of Rights</u>:  Tragically, the Court divested the entirety of Ms. Dodson's custodial access rights—despite the fact she never committed (i) child abuse, (ii) child neglect, (iii) child abandonment, or (iv) endangerment. Indeed, no such allegations were ever brought, and yet, the court terminated all of Ms. Dodson's parental rights—and gave sole custody of the Indian child to a man who is *not* adjudged the father.

(10)  <u>Fisher Should Not Have Custody</u>:  Ms. Dodson's parental rights should not have been terminated in the first place.  But still, even in those instances where proof exists, *beyond a reasonable doubt*, that an Indian mother caused actual harm to her Indian child—the placement preference must be, *first*, with "tribal relations," who must have preference over "putative fathers," and other would-be patriarchs, who cannot (or will not) prove themselves the father.  (Mr. Fisher is represented by two, certified family-law specialists—who refuse to file a judgment for paternity. It would appear that, "*Something really wrong is going on here*.")

(11)  <u>Relief Sought</u>:  Petitioner, Ms. Dodson, seeks all the following remedies—

      (i)        to remove the state-court paternity action to Cherokee Nation District Court, [25 U.S.C. § 1911(b)];

      (ii)      to invalidate the custody order, (Aug. 10, 2021), terminating Ms. Dodson's parental rights, [25 U.S.C. § 1914];

      (iii)     to return custody of the Indian child to his Indian mother, Ms. Dodson, [25 U.S.C. § 1916(b)].

## II.    Jurisdiction and Venue.

(12)    <u>Jurisdiction</u>:  Plaintiff's claims arise under federal law, THE INDIAN CHILD WELFARE ACT *of* 1978, ("ICWA"), [25 U.S.C. §§ 1901]; *therefore*, there exists federal question jurisdiction, [28 U.S.C. § 1331].

(13)    '<u>Competent Jurisdiction</u>':  Parents may bring petitions in federal court under THE INDIAN CHILD WELFARE ACT *of* 1978, ("ICWA").  U.S. District Courts are courts of "competent jurisdiction" under ICWA, which "provides a cause of action in federal court to ***invalidate certain state court child custody proceedings***," [*see Doe v. Mann*, 415 F.3d 1038, 1041 (9th Cir. 2005); (bold italics added)].

(14)    <u>Venue</u>:  All events took place within Orange County, Calif.; *therefore*, U.S.D.C., Central District, is the proper venue, [28 U.S.C. § 1391(b)(1)].

/ / / /

## III.    The Putative Father—No Judgment of Paternity.

(15)    <u>The Indian Child</u>:  Ms. Dodson gave birth to Roland Davis on Aug. 9, 2014. For the first seven years of his life, (Aug. 9, 2014 – Aug. 10, 2021), the Indian child resided with Ms. Dodson at her home in Laguna Hills.  For the first seven years, Ms. Dodson alone provided food, shelter, care and support.

(16)    <u>The Parties Never Married</u>:  Ms. Dodson and Mr. Fisher were ***never married***. Notably, had they been married, ICWA would *not* apply and Mr. Fisher would be legally presumed the father.  But again, as above stated, Mr. Fisher (i) refuses to file a judgment for paternity, and (ii) refuses to take a DNA test.

(17)    <u>ICWA—No Application to Divorce</u>:  ICWA does not apply to, "[a]n award of custody of the Indian child to one of the parents," [25 CFR 23.103(b)(3)].  But here, Mr. Fisher has *not* been adjudged the father.  Obviously, in divorce cases, the husband is legally presumed the father, and the rights of a biological parent will always be paramount to the Indian child's relatives, which explains why ICWA does not apply to divorce proceedings.

(18)   <u>Pecking Order</u>:  Where there exists proof, *beyond a reasonable doubt*, [25 U.S.C. § 1912(f)], that an Indian mother caused actual harm to her Indian child, (meaning actual child abuse or child neglect, *etc.*), placement preference must be first with Indian relatives.  Petitioner contends Congress established a pecking order for placement preferences—

> ***first***, where courts terminate parental rights of an Indian mother, based on actual harm to her Indian child, the ***first placement preference***, regardless of ICWA, will always to the other biological parent; ***second***, where courts terminate parental rights of an Indian mother, based on actual harm to her Indian child, the ***second placement preference***— must be an Indian household, including instances where, as here, there is no judgement of paternity; (and then, the last-resort placement of an Indian child would be with adoptive parents or foster parents).

(19)   <u>History of Domestic Violence</u>:  Elliot Fisher has a documented history of domestic violence, including violence against both Plaintiff and the child, [OCSC, Case No. 15V001250].  This documented history renders him unsuitable for placement under ICWA standards.  Furthermore, Ms. Dodson alleges that Mr. Fisher committed rape as against her.  The minor child may be a product of this union.  (Note: Ms. Dodson did file criminal allegations, but the D.A. found insufficient evidence to warrant charges.)

/ / / /


### IV.    Ms. Dodson's Parental Rights—Terminated.

(20)   <u>Termination of Rights</u>:  On Aug. 10, 2021, the State of California, by and through its agents, *Orange County Superior Court*, did unlawfully remove the Indian child from his Indian mother, (Ms. Dodson), and wrongfully placed the Indian child with Elliot Fisher, (putative father), in violation of ICWA safeguards and procedures, [25 U.S.C. §§ 1911, 1912, and 1913]; *for example*, there was no

notice was given to the Cherokee Nation, the state-court relied on the wrong evidentiary standard, and there was no expert testimony, *etc*. As a result, the challenged custody order, Aug. 10, 2021, must be deemed invalid.

(21) <u>Civil Death Sentence</u>: On Aug. 10, 2021, the State of California handed-down what amounts to a "civil death sentence." The State constructively terminated Ms. Dodson's custodial rights. Indeed, the court stripped Ms. Dodson of all parenting rights. For more than ***four years***, Ms. Dodson has had—

    (a)    no right to cohabitate with her son;

    (b)    no right to visit with her son;

    (c)    no right to privately communicate with her son; and

    (d)    no right to participate in decisions affecting her son's life;

and now, after more than ***four years***, Ms. Dodson concludes it's permanent.

(22) <u>Constructive Termination</u>: The State indefinitely deprived all Ms. Dodson's parenting rights, resulting in *de facto* termination—

    (i)    the order deprives the entirety of Ms. Dodson's parental rights, (*i.e.*, both physical and legal custody);

    (ii)    the order contains no "expiration date," *i.e.*, the length of its duration is indefinite—by its own terms, it never expires;

    (iii)    the order contains no "roadmap to recovery," (*i.e.*, no terms and conditions which, if satisfied, might result in recovery of parental rights).

(23) <u>No Findings of 'Unfitness'</u>: Ms. Dodson has never been found "unfit"; *therefore*, as a matter of law, there never existed a factual or legal basis to deprive her custodial access rights in the first place.

(24) <u>Ms. Dodson—'Fit' Parent</u>: Petitioner is a "fit" parent—never found "unfit." She never committed (i) child abuse, (ii) child neglect, (iii) child abandonment, or (iv) child endangerment, (*i.e.*, she never harmed her boy). Ms. Dodson is a "fit" parent—preceisly because she's never been found "unfit."

(25)   Troxel Fitness Presumption:  "***There is a presumption that fit parents act in their children's best interests***," [*Troxel v. Granville*, 530 U.S. 57, 58 (2000), *citing Parham v. J. R*., 442 U. S. 584, 602; (bold italics added)].  Ms. Dodson is thus presumed to be acting in her son's best interests, so there's no basis for the state-court to make "best interest" determinations.  "We have long held that there exists a "***private realm of family life which the state cannot enter***,"" [*Hodgson v. Minnesota*. 497 U.S. 417, at 446 – 447, (1990), citing, *Prince v. Massachusetts*, 321 U.S. 158, at 166, (1944); (bold italics added)].

(26)   All Parental Rights—Terminated:  Despite the fact that Ms. Dodson is a "fit" parent, the court nevertheless terminated all her parental rights.  Today, Ms. Dodson has no legal ablity to exercise (a) ***care, custody, and control*** of her son, *i.e*., within the meaning of *Troxel vs. Granville*, [530 U.S. 57 (2000)], and no legal ability to exercise (b) ***private familial speech***, *i.e*., within the meaning of *Rotary Int'l vs. Rotary Club of Duarte*, [481 U.S. 537 (1987)], and *Roberts vs. U.S. Jaycees*, [468 U.S. 609 (1984)].

(27)   Life-Support Hypothetical:  If the Indian child, God forbid, were in a car accident, rushed to the E.R. in critical condition, and placed on life-support—the Indian mom would have no ability to visit her Indian son in the hospital.  (And, if she were to attempt a visit, the putative father, with all deliberate haste, would file for a restraining order, along with sanctions and attorney's fees, *etc*.)

(28)   No Expiration Date:  As above explained, the challenged custody order, (Aug. 10, 2021), deprives all custodial rights, and it bears no expiration date.  And thus, after more than ***four years***, with no end in sight, Ms. Dodson concludes the termination has become permanent.

(29)   No Roadmap to Recovery:  Again, the challenged order, (Aug. 10, 2021), provides no roadmap to recovery.  It identifies no stated goal which, if achieved, might result in recovery of parental rights.  This crushes any semblance of hope. The custody order is basically an indefinite prison sentence.

(30)    <u>Termination of Parental Rights Proceedings</u>:  ICWA applies to child custody proceedings that involve an "Indian child," as defined by the Act.  As per ICWA, 25 U.S.C. § 1903(1), "child custody proceeding shall mean and include"—

> "[T]ermination of parental rights" which shall mean ***any action resulting in the termination of the parent-child relationship*,"
> [25 U.S.C. § 1903(1)(ii); ("Definitions"); *see Adoptive Couple v. Baby Girl*, 570 U.S. 637, 657 (2013); (bold italics added)].

(31)    <u>'Any Action' Resulting in Termination</u>:  Ms. Dodson's custodial access rights have been terminated within in the meaning of 25 U.S.C. § 1903(1), *i.e.*, "***any action resulting in the termination of the parent-child relationship*.***"

(32)    <u>Calif. Rules of Court</u>:  ICWA applies to "[p]roceedings under the Family Code resulting in adoption or termination of parental rights," [Calif. Rules of Court 5.480(4)].  Justice Alito explains—

> "ICWA restricts a state court's ability to terminate the parental rights of an Indian parent in two relevant ways.  Section 1912(f) prohibits a state court from involuntarily terminating parental rights "in the absence of a determination, supported by ***evidence beyond a reasonable doubt***, including testimony of ***qualified expert witnesses***, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."  Section 1912(d) prohibits a state court from terminating parental rights until the court is satisfied 'that active efforts have been made to provide ***remedial services*** and ***rehabilitative programs*** designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.'"
> [*Adoptive Couple v. Baby Girl*, 570 U.S. 637, 657-658, (2013); (bold italics added)].

(33)  <u>SCOTUS Explains ICWA</u>:  "[T]the law's operation is simple.  It installs substantive and procedural guardrails against the unjustified termination of parental rights and removal of Indian children from tribal life," [*Haaland v. Brackeen*, 599 U.S. 255, 305 (2023)].

(34)  <u>U.S. District Courts May Invalidate State-Court Actions</u>:  Federal district courts have "federal question" jurisdiction over ICWA claims.  Sec. 1914, "grants federal district courts the authority to ***invalidate state court actions*** that violate §§ 1911, 1912, and 1913," [*Doe v. Mann*, 415 F.3d 1038, 1041, (9th Cir. 2005); (bold italics added)].

(35)  <u>ICWA May Be Enforced 'After' Termination of Rights</u>:  Most significantly, "ICWA's notice requirements may be enforced ***after the issuance of an order*** terminating parental rights," [*In re Isaiah W.* 1 Cal. 5th 1, 13, (2016); (bold italics added)].

(36)  <u>Recent Calif. Supreme Court Decision</u>:  In 2024, *California Supreme Court* used ICWA to reverse an order terminating parental rights, holding, "[w]e therefore hold that an inadequate Cal-ICWA inquiry requires conditional reversal of the [court] order terminating parental rights with directions to the agency to conduct an adequate inquiry, supported by record documentation," [*see In re Dezi C.*, (2024) 16 Cal. 5th 1112].

(37)  <u>ICWA Violations—Sec. 1912(f)</u>:  Ms. Dodson's custodial access rights were constructively terminated, and yet, there was—

    a.     no determination, based on evidence ***beyond a reasonable doubt***,

    b.     no testimony of ***qualified expert witnesses***, and,

    c.     no evidence that the continued custody by the Indian mother is likely to result in serious ***emotional or physical damage to the child***,

[*see* 25 U.S.C. § 1912(f); ("Parental rights termination orders; evidence; determination of damage to child")].

(38)  <u>ICWA Violations—Sec. 1912(d)</u>:  Ms. Dodson's custodial access rights were constructively terminated, and yet—

    d.    the "party seeking to effect a termination of parental rights," (*i.e.*, Elliot Fisher), never attempted to "satisfy the court that active efforts have been made to provide ***remedial services*** and ***rehabilitative programs*** designed to ***prevent the breakup*** of the ***Indian family*** and that these efforts have proved unsuccessful," [*see* 25 U.S.C. § 1912(d); ("Remedial services and rehabilitative programs; preventive measures"); (bold italics added].

(39)  <u>No Actual Harm to the Indian Child</u>:  Ms. Dodson should never have lost custody.  Under SCOTUS precedent, courts may not issue custody orders that grant no actual parenting time—*unless a parent is found unfit*—with clear and convincing evidence of actual harm to a minor, [*see*, *e.g.*, *Stanley vs. Illinois*, 405 U.S. 645 (1972); *Smith vs. Org. of Foster Families*, 431 U.S. 816 (1977); *Quilloin vs. Walcott*, 434 U.S. 246 (1978); *Parham vs. J.R.*, 442 U.S. 584 (1979); *see also*, *Santosky vs. Kramer*, 455 U.S. 745 (1982)].

(40)  <u>Parenting is a Fundamental Right</u>:  For more than 100 years, SCOTUS has recognized the ***right to parent*** as a fundamental right guaranteed by the Fourteenth Amendment, [*see*, *e.g.*, *Meyer vs. Nebraska*, 262 U.S. 390, 399 (1923); *see also*, *Washington v. Glucksberg*, 521 U.S. 702, (1997)].

(41)  <u>Failure to Undertake Strict Scrutiny Analysis</u>:  In stripping Ms. Dodson of her fundamental right to parent, the court failed to undertake "strict scrutiny" analysis.  The challenged order, Aug. 10, 2021, is unconstitutional *per se*.  It fails to identify a *compelling governmental interest* sufficient to justify termination of federally-protected civil rights, [*see*, *e.g.*, *Skinner v. Oklahoma*, 316 U.S. 535 (1942); *Prince v. Mass.*, 321 U.S. 158 (1944); *Griswold v. Connecticut*, 381 U.S. 479 (1965); *Loving v. Virginia*, 897 U.S. 113 (1967); *see also*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972)].

### V.    Public Policy; Minimum Federal Standards.

(42)  <u>Congressional Findings</u>:  In 1978, Congress found, "an alarmingly high percentage of Indian families are broken up by [] removal, often unwarranted, " [25 U.S.C. § 1901(4)].

(43)  <u>Protecting Indian Children</u>:  "A major purpose of the ICWA is to protect 'Indian children who are members of […] an Indian tribe,'" [*In re H.M.*, (2025) 109 Cal. App. 5th 1171, 1180, *citing In re A.W.* (2019) 38 Cal.App.5th 655, 662].

(44)  <u>Public Policy Declaration</u>:  Congress declares the following—

> "***The Congress hereby declares*** that it is the ***policy of this Nation to protect the best interests of Indian children*** and to promote the stability and security of Indian tribes and families by the establishment of ***minimum Federal standards*** for the removal of Indian children from their families."

[*See Indian Child Welfare Act*, ("ICWA"), (25 U.S.C. § 1902, ("Congressional declaration of policy"); (bold italics added)].

(45)  <u>Minimum Federal Standards</u>:  ICWA sets minimum federal requirements for state courts, none of which happened in Ms. Dodson's case, including—

a.    **Notice to Indian Tribes**:  State courts must provide notice to Indian tribes, in family court proceedings to terminate parental rights, when the court knows (or has reason to know) an Indian child is involved.  Notice ensures the tribe is aware of its right to intervene or exercise jurisdiction over the proceeding.  Notice must comply with the requirements of 25 USCS § 1912, and 25 C.F.R. § 23.11, which include sending notice by registered or certified mail with return receipt requested, [*see*, *e.g.*, *In re Kenneth D.*, 16 Cal. 5th 1087; *see also*, *In re Jerry R.*, 95 Cal. App. 5th 388].

b.    **Right to Intervene**:  Indian tribes have the right to intervene at any point in a child custody proceeding involving an Indian child.  This includes the ability to petition the court to invalidate prior orders of placement, or

termination of parental rights, [*see*, *e.g.*, *In re Kenneth D.*, 16 Cal. 5th 1087, *In re Dezi C.*, 16 Cal. 5th 1112].

c.    **Placement Preferences**:  ICWA establishes placement preferences for Indian children.  These preferences prioritize placement with extended family members, other members of the child's tribe, or other Indian families, unless good cause exists to deviate from these preferences, [Calif. Family Code § 175, Calif. Wel. & Inst. Code § 224, Calif. Rules of Court, 5.480].

d.    **Beyond a Reasonable Doubt**:  Notably, termination of an Indian parent's rights requires evidence "beyond a reasonable doubt."

"[A]n order terminating parental rights requires "a determination, supported by ***evidence beyond a reasonable doubt***," that continued custody by the parent or Indian custodian is likely to result in such damage [. . .]  Any placement of an Indian child must follow the preferences set out in ICWA [. . .]  Finally, ICWA authorizes collateral attacks:  When a court removes an Indian child or terminates parental rights in violation of ICWA, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action," [*In re Abbigail A.*, (2016) 1 Cal. 5th 83, 91; (bold italics added)]

(46)    <u>The Notice Requirement</u>:  The notice requirement, (*supra*), enables tribes to determine whether the child is Indian, and if so, whether to intervene, or exercise jurisdiction over the proceeding.  "No [. . .] termination of parental rights proceeding may be held until at least 10 days after the tribe receives the required notice," [*In re Isaiah W.*, No. B219900, (2010); *see also*, 25 U.S.C. § 1912(a)]. Here, Ms. Dodson's custodial rights were terminated, and yet, the Cherokee Nation never received notice from the party seeking termination, (Mr. Fisher).

(47)  <u>State-Court Duty to Enquire</u>:  As per 25 CFR § 23.107, family courts must ask parents whether the subject minor is an Indian child, as per ICWA; *however*, Orange County family court systematically fails to observe and enforce ICWA. As per 25 CFR § 23.107, state courts must ask parents in child-custody proceedings whether they know (or have reason to know) whether the subject minor is an Indian child.  The inquiry is must be made at the commencement of the proceeding and all responses should be on the record, [25 CFR § 23.107(a)]. However, due to systemic discrimination, none of this happened in the paternity case, *Fisher vs. Dodson*, (filed July 1, 2015).

(48)  <u>No Notice to the Tribe</u>:  Most significantly, no notice was provided to the Cherokee Nation as required by 25 U.S.C. § 1912(a).  The Cherokee Nation was denied the opportunity to intervene, provide cultural guidance, or otherwise exercise its sovereign interest in the welfare of its citizenry.

(49)  <u>No Remedial Services</u>:  No active efforts were made to provide remedial services and rehabilitative programs to prevent the breakup of the Indian family, as required by 25 U.S.C. § 1912(d).

(50)  <u>No Qualified Expert—Damage to the Child</u>:  No ICWA qualified expert testified in in support of the removal or the decision to place with Indian child with a man whose parentage claim has never been reduced to judgment.  The family failed to require testimony from a qualified expert witness affirming that continued custody with Ms. Dodson would've result in serious emotional or physical damage to the child, as required by 25 U.S.C. § 1912(e)-(f).

(51)  <u>Violation of Placement Preferences</u>:  The placement with Mr. Elliot Fisher— a man whose parentage claim has never been reduced to a judgment—violates ICWA's mandatory placement preferences, [25 U.S.C. § 1915], which prioritize placement.  Where, as here, no biological father steps forward, placement must be with a member of the Indian child's extended family, other members of the Indian child's tribe, or other Indian families.

(52)  <u>No Emergency Procedures</u>:  In terminating Ms. Dodson's custody rights, and removing the Indian child from his Indian home (and Indian mother), the family court failed to make findings of "imminent physical damage or harm" to the child as required by 25 U.S.C. § 1922.

(53)  <u>No Good Cause Shown</u>:  No good cause was shown for deviating from ICWA placement preferences.  The family court failed to make specific findings on the record demonstrating that good cause existed to place the child with the non-Indian, putative father—rather than placement with extended Indian family or other tribal placement options.

(54)  <u>Failure to Consider Tribal Court Jurisdiction</u>:  The state court failed to transfer jurisdiction to the Cherokee Nation tribal court under 25 U.S.C. § 1911(b), despite the fact of the child's tribal citizenship and the tribe's exclusive jurisdiction over child welfare matters involving its tribal members—in instances where state courts terminate an Indian parent's custodial rights—in custody order that bear no "expiration date" and no "roadmap to recovery."

(55)  <u>State Court Motion to Transfer</u>:  As a member of the Cherokee Nation, Ms. Dodson has standing to challenge the ongoing ICWA violations.  Concurrent with this federal action, Plaintiff will file a state-court motion to transfer the custody matter the to Cherokee Nation Tribal Court pursuant, [*see* 25 U.S.C. § 1911(b); ("*An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child*")].

(56)  <u>Right to Petition</u>:  "Any parent . . . from whose custody [an Indian] child was removed . . . ***may petition any court of competent jurisdiction*** to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title," [*see In re Isaiah W.* 1 Cal. 5th 1, 13, (2016); (bold italics added); *see also*, 25 U.S.C. § 1914].

(57)  <u>Right of Intervention</u>:  "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved,

***the party seeking*** … ***termination of parental rights to***, ***an Indian child shall notify the [Indian] parent*** . . . ***and the Indian child's tribe***, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention," [*In re Isaiah W.* 1 Cal. 5th 1, (2016); *see also*, 25 U.S.C. § 1912(a); (bold italics added)].  But here, the party seeking termination, Mr. Fisher, never gave statutory notice to the Cherokee Nation.

/ / / /

### VI.     State-Court Discrimination.

(58)   <u>State-Court Discrimination</u>:  In ten years of litigation, the Orange County family court refuses to acknowledge ICWA.  In May 2024, Ms. Dodson, in open court, mentioned ICWA; *however*, Judge Ami Sagel quickly put the kibosh on it. When Ms. Dodson, in open court, examined a social worker re ICWA, Judge Sagel immediately shut it down, citing irrelevance, sternly instructing Ms. Dodson to, "*Move-on*."  The reader will note, the minute orders, (from May 29–30, 2024), make no mention of ICWA or Ms. Dodson's Cherokee ancestry.  The bleak reality is that Orange County family courts systematically refuse to comply with ICWA, and this necessitates federal intervention.

(59)   <u>Differing Interests</u>:  The State of California and the Cherokee Nation maintain divergent goals.  Incentivzied by the promise of limitless federal funding, the State of California maintains policies calculated to fracture family units and uproot family trees; in stark contrast, the Cherokee Nation maintains policies that strengthen and weld the Cherokee community.  In other words, the State wants to tear families apart, while the Cherokee Nation seeks to keep families together.

(60)   <u>Grave and Irreparable Harm</u>:  The ICWA violations are continuous and ongoing.  Each day that passes constitutes a continuing violation of federal law, with grave and irreparable harm to the Indian mother and her Indian son.

/ / / /

1

## VII.   Necessity for Federal Intervention.

2  (61)   <u>Why No Paternity Judgment?</u>:  Upon hearing about Ms. Dodson's paternity

3  case, the question universally arises, "How could it drag-on for ten years?—with

4  no judgment of paternity?"  And, "Why does attorney, Bonnie Rosen, refuse to

5  obey orders—and simply file a paternity judgment?"  The short answer is this:

6  If Bonnie Rosen were to file a judgment, it would expose the ongoing fraud that

7  she perpetrates on the court.  A pall of corruption now hangs over Orange County

8  family courts.  The ugly truth is that Mr. Fisher has paid at least $1 million—to

9  Bonnie Rosen, who runs a "designer" sex-trafficking operation—that judicially

10  kidnapped a 7-year-old Indian boy—from an Indian mother on food stamps.

11  Petitioner prays this court refer the matter to FBI for investigation.

12  (62)   <u>Intervention Needed</u>:  Where a mother suffers ten years of fraud, waste, and

13  abuse—in a never-ending paternity action—in which the State severs the mother-

14  child relationship—despite the fact that she never harmed the child—*and*, on top

15  of that—the so-called father either cannot (or will not) file a paternity judgment—

16  or otherwise take a DNA test—there is dire need for federal intervention.

17  (63)   <u>Trial by Jury</u>:  Petitioner demands trial by jury, [Seventh Amendment].

18  / / / /

19

20  ## VIII.  Claims for Relief.

21  (64)   <u>Removal of State-Court Action</u>:  Pursuant to 25 U.S.C. § 1911(b), Ms.

22  Dodson asks to remove the state-court paternity action to Cherokee Nation

23  District Court, [25 U.S.C. § 1911(b)].

24  (65)   <u>Invalidation of State-Court Orders</u>:  Pursuant to 25 U.S.C. § 1914, Ms.

25  Dodson asks this Court to invalidate the state-court termination order on the

26  grounds that it does not comply with ICWA, [§§ 1911, 1912, and 1913].

27  (66)   <u>Return of the Minor Child</u>:  Pursuant to 25 U.S.C. § 1916(b), Ms. Dodson

28  asks this Court to return custody of the Indian child to his Indian mother.

<u>PRAYER *for* RELIEF</u>

(67)    WHEREFORE, Petitioner respectfully requests that this Court:

A.    DECLARE the state-court custody orders invalid pursuant to 25 U.S.C. § 1914, due to ICWA violations;

B.    DIRECT proper notice to the Cherkoee nation pursuant to 25 USCS § 1912;

C.    RETURN custody of the Indian child to his Indian mother pursuant to 25 U.S.C. § 1916(b);

D.    EXPEDITE consideration of this matter given the grave and irreparable harm to the Indian child and Indian mother;

E.    GRANT such other and further relief as the Court deems just and proper.

////

Dated: **Sept. 8, 2025**        LAW OFFICES OF T. MATTHEW PHILLIPS

*T. Matthew Phillips*

T. Matthew Phillips, Esq.
Calif. Bar No. 165833
U.S. Bar No. 317048
Email: TMatthewPhillips@aol.com
Tel: (323) 314-6996
*Counsel for Petitioner*

\*      \*      \*

*Petition Under The Indian Child Welfare Act, ("ICWA"), p.16 of 17*

<u>V<small>ERIFICATION</small> *of* N<small>ICOLE</small> D<small>ODSON</small></u>

My name is Nicole Dodson.  I am the Petitioner.  The within allegations are true and correct of my own personal knowledge.  As to those matters alleged on information and belief, I reasonably believe them to be true.  If called upon to testify, I could and would give competent and truthful evidence.

1.      Attached hereto as Exhibit No. "1" is a true and correct copy of the Cherokee Nation Membership Card for my son, Roland Davis Fisher, (Registry No. C0526330).

2.      Attached hereto as Exhibit No. "2" is a true and correct copy of the Cherokee Nation Membership Card for me, Nicole Erin Dodson, (Registry No. C0526560).

3.      Attached hereto as Exhibit No. "3" is a true and correct copy of the *Minute Order*, dated Nov. 9, 2018, issued by Judge De La Cruz, in connection with my paternity case, *Fisher vs. Dodson*, (15P000973).

4.      Attached hereto as Exhibit No. "4" is a true and correct copy of the *Minute Order*, dated May 30, 2024, issued by Judge Ami Sagel, in connection with my paternity case, *Fisher vs. Dodson*, (15P000973).

***I hereby declare under penalty of perjury under the laws of the State of California the foregoing is both true and correct.***

/ / / /

Dated:  **Sept. 8, 2025**


*Nicole E. Dodson*
Nicole Dodson, Plaintiff


*      *      *

# Exhibit No. "1"

Membership Card, Cherokee Nation

Roland Davis Fisher, Registry No. C0526330

# CHEROKEE NATION ᏣᎳᎩ ᎠᏰᎵ

C0526330

**CHEROKEE REGISTRY NUMBER**

8/9/2014

**DATE OF BIRTH**

ROLAND DAVIS FISHER

**NAME**

26701 QUAIL CRK APT 159

**ADDRESS**

LAGUNA HILLS                    CA        92656

**CITY**                    **STATE**        **ZIP CODE**

This card shows the above named person to
be a certified Citizen of the Cherokee Nation

3/19/2025

**DATE APPROVED**

*Derrick Vann*

**TRIBAL REGISTRAR**

**PRINCIPAL CHIEF**

SIGNATURE OF THE TRIBAL CITIZEN

# Exhibit No. "2"

Membership Card, Cherokee Nation

Nicole Erin Dodson, Registry No. C0526560

# CHEROKEE NATION ᏣᎳᎩ ᎠᏰᎵ

**C0526560**

CHEROKEE REGISTRY NUMBER

**3/2/1984**

DATE OF BIRTH

**NICOLE ERIN DODSON**

NAME

**26701 QUAIL CRK APT 159**

ADDRESS

**LAGUNA HILLS**            **CA**        **92656**

CITY                        STATE      ZIP CODE

This card shows the above named person to
be a certified Citizen of the Cherokee Nation

**3/26/2025**

DATE APPROVED

*Derrick Vann*

TRIBAL REGISTRAR

PRINCIPAL CHIEF

SIGNATURE OF THE TRIBAL CITIZEN

# Exhibit No. "3"

Minute Order, Nov. 9, 2018

Fisher vs. Dodson, (15P000973)

## SUPERIOR COURT OF CALIFORNIA
### FOR THE COUNTY OF ORANGE
### MINUTE ORDER
11/9/2018

**Judge / Commissioner:** ANDRE DE LA CRUZ

**Dept.:** L63 at 8:00 AM                    **Clerk:** S. ARAZA

**Bailiff:** R. CONTRERAS                  **Reporter:** S. HARDESTY 13088

**Case Type:** PARENTAGE

**Case Number:** 15P000973  FISHER V DODSON

**Appearances:**
LAW OFFICES OF ROSEN & ROSEN LLP, ATTORNEY FOR PETITIONER

---

**NOTICE - DISMISS NO PROOF OF SERVICE**                    Filed on  10/5/2018
   By

9:45 AM In open court, Petitioner's attorney is present.

Petitioner's attorney informs the Court she has filed the stipulation the parties reached and requests to continue matter.

Court grants the continuance request.

**Continuance**
**The Court orders this matter continued to January 18, 2019 at 8:00 AM in Department L63.**

Court informs the Petitioner's attorney, if the Judgment is not filed by the next hearing date Court will dismiss the case.

Petitioner's attorney to give notice.

9:46 AM Matter concludes for this date.

#147

# Exhibit No. "4"

Minute Order, May 30, 2024

Fisher vs. Dodson, (15P000973)

## SUPERIOR COURT OF CALIFORNIA
## FOR THE COUNTY OF ORANGE
## MINUTE ORDER
### 5/30/2024

**Judge / Commissioner:** AMI SHETH SAGEL

**Dept.:** L72 at 10:30 AM                          **Clerk:** V. CRESPO

**Bailiff:** J. CISNEROS                            **Reporter:** B. ACHESON 12766

**Case Type:** PARENTAGE

**Case Number:** 15P000973

**Case Name:** ELLIOT FISHER VS NICOLE DODSON

**Appearances:**
NICOLE DODSON, RESPONDENT, MOVING PARTY - PROTECTIVE ORDER, RESPONDING PARTY -
PROTECTIVE ORDER
ELLIOT FISHER, PETITIONER, RESPONDING PARTY - PROTECTIVE ORDER, MOVING PARTY - PROTECTIVE
ORDER
LAW OFFICES OF ROSEN & ROSEN LLP, ATTORNEY FOR PETITIONER
**Attorney for PET / PLTF**
HAYLEY ROSEN

---

By                                                  Filed on

**MOTION - OTHER**                                  Filed on  10/12/2023
  By  PETITIONER                                    ELLIOT FISHER

**RFO - MODIFICATION CUSTODY / VISITATION / SUPPORT**   Filed on  11/28/2023
  By  RESPONDENT                                    NICOLE DODSON

In open court at 10:27 a.m., appearances as indicated above.

Matter before the Court is a continuing Trial.

Witness, Laura Kindron is back on the stand and is sworn and testifies.

**Petitioner's exhibit 101**, 2021.10.04 Email Re Phone Call, is marked for identification and received into
evidence.

Discussion ensues as to limited time.

**Petitioner's exhibit 15**, 10/12/2023 Email from Respondent to Mrs. Nye re Father illegally obtaining
custody etc., is marked for identification and received into evidence.

Counsel for Petitioner provides a copy of an email with no objection to the witness.

**Petitioner's exhibit 122**, 03/29/2024-04/29/2024 Email Re: To Laura REF Roland Fisher From Aaron Dodson., is marked for identification and received into evidence.

Witness, Laura Kindron is excused.

At 11:28 a.m., matter trails to this afternoon.

Back on the record at 2:19 p.m., appearances as indicated above.

Court notes there is a witness in the courtroom and excuses witness to the hallway until called to testify.

Both parties are sworn in to testify.

Court hears from both parties as to custody, visitation, support request.

Court hears from Respondent as to personal therapy.

The Court states its tentative ruling for the record.

Court hears argument from parties.

Discussion ensues as to Judgment on Paternity.

Court orders Counsel for Petitioner to submit a proposed Judgment on petition for paternity.

Discussion ensues as to changing the monitor.

Court notes there are no changes as to current monitor.

At the request of Petitioner's Counsel the Court takes judicial notice of the 17 attachments filed on 05/17/2024 by Petitioner.

**Closed Hearing**
At 3:02 p.m., due to the nature and confidentiality of the proceeding, the courtroom is cleared and closed to the public for this portion of the hearing. Only parties, respective counsel and court staff remain in the courtroom.

The testimony must not be included in a written transcript of these proceedings without court order.

**Petitioner's exhibit 120**, SSA Records received on 4/30/2024 with Certification, is received into evidence.

At 3:13 p.m., Court declares recess.

Back in open court at 3:40 p.m.

Petitioner's Counsel to prepare proposed orders for parties to obtain copies of the confidential transcripts.

Witness, Erin Lalor is sworn and testifies.

**Petitioner's exhibit 21**, 8/11/2023 Email between R and Monitor, Erin Lalor, is marked for identification.

Witness, Erin Lalor is excused for the day and under subpoena ordered to appear on next hearing.

Court hears argument from both parties as to visitation monitor reports.

Pursuant to evidence code 1561, **Petitioner's exhibit 19**, Safe Overview Various Reports, is received into evidence.

**TRIAL**
**The Court orders these matters continued for the remaining of the TRIAL to September 3 - September 4, 2024 at 10:30 AM in Department L72. Parties are ordered to appear in person.**

Brief discussion ensues as to Petitioner's work trip and minor child traveling with him in July.

Petitioner's Counsel to file stipulation.

The Court directs parties to follow current visitation orders, unless upon written agreement.

Petitioner's Counsel to provide notice.

#4